UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MICHAEL KEITH DAUGHERTY, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 4:10CV942 RWS |
| THE HEIGHTS, et al., | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Plaintiff Keith Daugherty held a family gathering at a recreational facility owned by Defendant City of Richmond Heights. On the day of the event the swimming pool at the facility was closed to the public because of a chemical imbalance in the pool. Daugherty alleges that the real reason the pool closed was to prevent him and his family from using the pool. He asserts that Richmond Heights' action was motivated by racial discrimination. Richmond Heights has moved for summary judgment. Because Daugherty has failed to present any evidence that the closing of the pool was based on racial discrimination, I will grant Richmond Heights' motion.

*Background*

Richmond Heights owns and operates a recreational facility known as "The Heights." The facility includes a fitness center, gymnasium, and a kitchen and rooms which may be rented for events. In addition to other facilities, the Heights also contains an indoor swimming pool.

At the time of the events which gave rise to this lawsuit, Defendant Mary Siler was the Recreational Specialist for The Heights. Defendant Cassie Dauer was the Aquatic Specialist for The Heights. Defendant Teresa Proebsting was the Director of Parks and Recreation for The Heights.

*A problem with the pool's chemical levels*

The St. Louis County Health Department has rules regarding the chemical levels of public pools.  The rules require the operators of a public pool to test the water and to close the pool if chemical levels fall below a certain level.  The Heights uses a Chemtrol PC3000 to automatically monitor the pools' ph level and oxidation-reduction potential (ORP).   ORP measures the activity of the pool's sanitizer.  The World Health Organization has established a minimal threshold measurement of 650 millivolts of ORP to ensure virtually instantaneous bacterial and viral inactivation.  Any reading below 600 millivolts is unsafe for people to swim in.

On June 19, 2009, the Chemtrol unit began having problems keeping the proper chemical balance.  A pool technician from Midwest Pool Service and Supply Company came to The Heights and determined that an electric plug that provided power to an acid pump had malfunctioned and was causing the problem.  He replaced a plug on the pump.

On the morning of June 21, 2009, Aquatic Specialist Cassie Dauer informed Aquatic Specialist John Cornell that the Chemtrol unit was malfunctioning which cause discoloration of the pool water and the ORP to drop below the threshold of 650 millivolts.  The previous day, on June 20, 2009, the pool log showed that the ORP had been dropping steadily from 680 millivolts when the pool opened to 610 at 4:00 p.m. to 526 after the facility closed.  St. Louis County requires a pool to have a minimum level of one free chlorine with an ideal range of 2.0 - 3.0.  As of noon on June 20, 2009, the free chlorine level was at 0.5.  Although the pool remained open after noon, it should have been closed based on the pool's chemical imbalance.  When Dauer tested the pool's water around 11:30 a.m. on the morning of June 21, 2009, the free chlorine level was at 0.5 and the ORP was 456.  The Chemtrol unit was malfunctioning.  In an attempt to

correct the chemical imbalance Cassie Dauer tried to reset the unit but could not do so. She left a message with Midwest Pool to make a service call the following morning June 22, 2009 (Monday), to repair the problem. Based on the pool's chemical imbalance, Dauer made the decision to close the pool for the day.

On the morning of June 22, 2009, John Cornell found the pool to have a very low chlorine level. The Midwest Pool technician came and replaced an extension chord which fixed the Chemtrol problem. The pool's chemical levels rose to an acceptable level an the pool was opened to the public at noon.

*Daugherty's family event at The Heights*

On May 18, 2009, family members of Daugherty visited The Heights, met with Mary Siler, and reserved a public room for a birthday party on Sunday, June 21, 2009 between 2:00 p.m. and 6:00 p.m. The family also rented the kitchen facility. Approximately fifty-six guests were expected to attend the party. The family was also interested in using the indoor pool. An additional fee of $7.00 for adults and $5.00 for children is charged for the use of the pool. Because it was uncertain how many of the guests would want to use the pool it was decided that pool fees would be collected on the day of the event.

The rental agreement identified family member Kim Taylor as the contact person for the facility rental. The only contact phone number on the agreement was Ms. Taylor's daytime phone number.

On the morning of June 21, 2009, Dauer tested the pool's water and found the chemical levels to be below acceptable thresholds. After attempting to fix the problem, Dauer made the decision to close the pool to all guests for the day. At the time she made that decision, Dauer

was not aware that Daugherty and the other birthday party guests were scheduled to arrive later that day.  After Siler learned of the pool closure, she called the only contact number that was on the rental agreement, Ms. Taylor's, and left a message about the pool closure.  It turned out that this was Ms. Taylor's work number and she did not get the message that day.

Daugherty arrived at the pool around 1:15 p.m. and after unloading supplies for the party went to the pool area.  He does not recall seeing any swimmers in the pool.  He was told by Siler that the pool was closed and that she had tried to contact Ms. Taylor earlier that day to let her know about the pool.  Dauer also spoke with Daugherty and told him that the pool was closed earlier that day due to the chemical imbalance.  Daugherty requested that, even though the pool was closed to the public, the pool be opened only for the people who were attending the party, all of whom were African American.  Dauer refused that request because the chemical imbalance made the pool unsafe and it was closed for everyone.  The pool remained closed for the day.

To accommodate the guests of the birthday party, and other users of The Heights who wished to swim, free passes were offered to the guests to use at the Maplewood Family Aquatic Center the same day.  That facility is located a mile from The Heights.  Daugherty did not accept a pass but he does not know whether other party members used the passes.  Nor does he know whether any of the guests left The Heights before the party ended at 6:00 p.m.

Daugherty alleges in this lawsuit that the pool was closed as an act of discrimination against him and the other party guests.  Richmond Heights has moved for summary judgment asserting that Daugherty has not produce any evidence which would support his claim.

### *Legal Standard*

Summary judgment is appropriate if the evidence, viewed in the light most favorable to

the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Lynn v. Deaconess Medical Center, 160 F.3d 484, 486 (8th Cir. 1998)(citing Fed. R. Civ. P. 56(c)). The party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of the affidavits, pleadings, depositions, answers to interrogatories, and admissions on file which it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Citrate, 477 U.S. 317, 323 (1986). When such a motion is made and supported by the movant, the nonmoving party may not rest on his pleadings but must produce sufficient evidence to support the existence of the essential elements of his case on which he bears the burden of proof. Id. at 324. In resisting a properly supported motion for summary judgment, the plaintiff has an affirmative burden to designate specific facts creating a triable controversy. Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1113 (8th Cir. 2004).

*Discussion*

Daugherty claims that The Heights' staffs' decision to close the pool on June 21, 2009 was motivated by racial discrimination in violation of various provisions of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000a *et seq.* Title II of the Civil Rights Act, 42 U.S.C. § 2000a et *seq.*, prohibits discrimination on the basis of race in places of public accommodations. It provides:

> All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin.

Richmond Heights agrees that The Heights is a public accommodation and is subject to the prohibition against discrimination under § 2000a. Daniel v. Paul, 395 U.S. 298, 303 (1969)

(recreational swimming area was a covered public accommodation based on its snack bar). However, Richmond Heights asserts that it did not discriminate against Daugherty. It asserts that Daugherty has failed to offer any evidence which would permit a reasonable jury to conclude that the pool was closed for a discriminatory purpose.

     The undisputed evidence is that The Heights was having problems maintaining the chemical balance of its pool for two days before the birthday party event on June 21, 2009. The pool records show that the chemical levels in the pool started falling below acceptable levels in the afternoon of the previous day. When the pool was tested on the morning of June 21, 2009, the chemical imbalance was so great that Dauer, after making attempts to solve the problem, made the decision to close the pool to everyone for the day. It is undisputed that Dauer was not aware that Daugherty and his family had rented a public room at The Heights to use later that day. After learning that the pool was closed, Siler called the only contact number The Heights had to inform Daugherty's family that the pool was closed for the day. When the guests arrived they were offered free passes to use another pool a mile away. It is undisputed that Midwest Pool came out the next morning, on June 22, 2009, and repaired an extension chord which fixed the pool's chemical imbalance.

     Daugherty's evidence of discrimination is that he found it suspicious that the pool was closed two hours before he and his guests arrived to begin setting up for the family event. However, he does not offer any evidence that anyone used the pool on June 21, 2009. He conclusively alleges that employees of The Heights conspired to discriminate against him and altered emails and other documents to cover their actions. Daugherty alleges that Midwest Pool's invoices were also altered to make it look like the pool had been serviced the morning on

June 22, 2009. In his response to Defendants' motion for summary judgment, Daugherty asserts that he went to the pool around 8:00 a.m. on the morning of June 22, 2009 and saw "bathers", most of whom were physically disabled. Daugherty asserts that this information contradicts The Heights employees' statements that the pool was not open to the public until noon on June 22, 2009.

An email dated June 22, 2009 at 8:26 a.m., from John Cornell to Teresa Proebsting and Cassie Dauer, states that Midwest Pool had come to the pool and made repairs. This information is supported by Midwest Pool's invoice. Cornell also states in the email that he had reset the chlorine feed and that the pool's chemicals had risen to an appropriate level. Cornell stated that although the pool's chemicals were in balance, the water was still murky and that he was going to wait to open the pool until "open swim" to let the water clear up.

Daugherty's assertion that some disabled people were in the pool on the morning of June 22, 2009 does not create an inference that the pool was closed the day before as an act of racial discrimination. Daugherty does not assert that only non-African Americans were allowed to use the pool that morning (Daugherty does not identify the race of the disabled people using the pool). Cornell's email at 8:26 a.m. on June 22, 2009 shows that the chemical imbalance was fixed at that time. The fact that a group of disabled people were using the pool before the pool was officially reopened does not create an inference of racial discrimination. The clear evidence in this case is that no one was permitted to swim in the pool after 12:00 p.m. on June 21, 2009. Daugherty and his family members, as well as other people who came to use the pool that afternoon, were offered free passes to a nearby pool. Daugherty has not offered any evidence that an African American has ever been denied access to The Height's pool because of race.

Accordingly,

**IT IS HEREBY ORDERED that** Defendants' motion for summary judgment [#40] is **GRANTED**.

**IT IS FURTHER ORDERED that** all other pending motions are **DENIED** as moot.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 17th day of October, 2011.